Ackerman, J.
Judgment having been heretofore rendered in favor of the plaintiff, defendant files its motion for a new trial. The court overrules the same. In overruling the motion, the court desires to review the case and give his reasons for so doing.
On April 14, 1923, Bessie Spencer was an employee of the Cleveland Athletic Club, hereinafter designated as the Athletic Club. At that time the Athletic Club procured from the Travelers Insurance Company, hereinafter refered to as the Insurance Company, what is known as a group policy of insurance on all of its employees, includ *370 ing Bessie Spencer. The Insurance Company caused to be printed individual certificate of insurance for each of. its employees which were delivered by the Athletic Club to the several employees including Bessie Spencer.
The original certificate delivered to Bessie Spencer provided for $250.00 of insurance. As the length of service increased additional amounts of insurance were issued to Bessie Spencer until at the time of her death' she had, through these various additions,, acquired a policy in the amount of $1,000.00. Bessie Spencer had named in her certificate or policy or portion of the group policy, her brother, the plaintiff, as beneficiary. Bessie Spencer continued uninterruptedly in the employ of the Athletic Club until the 28th day of April, 1932, when she died. She was taken ill on April 16, 1932, and died on April 28, 1932, from pernicious leukemia. At the time of her death she was a regular employee of the Athletic Club, Proof of death was served on both the Athletic Club and the Insurance Company on August 10, 1932. The policy of insurance had printed on the back of it the following: “Group Life Policy. One Year Renewable Term. Non-participating.”
Before the 14th day of April, 1932, the Athletic Club, through its directors, decided not to renew this policy of insurance for an additional term of one year and so notified the insurance company prior to April 14, 1932. There was some attempt made to negotiate a different kind of policy but the efforts proved fruitless until May 20, 1932 (Plff’s Ex. 16) the Insurance Company notified the Athletic Club as follows:
“Pursuant with our recent conversations and in accordance with your request, we are proceeding with the cancellation by lapse of your Group Life Policy effective April 14, 1932.
“Final statement will be made up and forwarded to you in the near future.”
The policy of insurance was written under the authority of Section 9417, General Code. The General Code of Ohio in that portion where’it deals with Insurance, Chapter 2, provides for the issuing of “Standard Forms, Provisions *371 and Prohibitions.” It is pertinent to a consideration of this case to recur to the history of the adoption of various sections of the General Code, Sections 9410 to 9426, inclusive, which grew out of the investigation by the Armstrong Commission authorized by the Legislature of the state of New York on account of the public scandals existing at that time in the insurance business. Up to that time insurance companies wrote many different kinds of policies.
Many people believed' that they had insurance and were disallusioned when it became time for the payment of the proceeds to find there were various terms and provisions inserted in the policies unrealized and unrecognized by the procurers of the policies which prevented the payment of the policies. The policies were drawn with trick phrases and cunningly devised language so that no ordinary person was able to understand what he had when he had an insurance policy and whether he was protected or not protected until the time came to pay. These and other conditions in the insurance business created much public indignation and out of it the Armstrong Commission was appointed. As a result of its investigation certain recommendations were made to the Legislature of New York for the creation by law of certain standard forms, provisions and prohibitions to protect the public. Certain of these recommendations were enacted into law by the Legislature of Ohio and part of them are embodied in the sections of the Ohio General Code from Section 9410 to 9426, inclusive.
Section 9410, General Code, says that no policy of life insurance shall be issued or delivered in this state unless authorized by the provisions of this chapter. The plain intent, purpose and effect of this section is to deprive a life insurance company and a policy holder of changing the terms, conditions and provisions of the policy by contract from the provisions of the General Code.
Section 9411, General Code, provides: “The"forms prescribed by the next following six sections are established as standard forms in which policies of life insurance may be issued and delivered in this state. * * * ”
No policy of life insurance shall be issued or delivered in this state unless it conforms to the standard forms, etc. *372 prescribed by the next following six sections.. Group Policy is issued under Section 9417. This section is one of the “next following six sections.”
It is therefore clear that the Insurance Company could not issue or deliver to the Athletic Club a policy providing for life insurance and as provided in the next following six sections unless it conformed absolutely to the section referring to the particular kind of a policy issued to the Athletic Club. So it must follow that the Athletic Club and the Insurance Company could not in the written policy or by a separate contract or by any other arrangement change the force and effect of the section of the General Code (9417) under which this particular policy was written. To do so is prohibited by law and against public policy.
Now, the particular Group Policy of insurance which was issued to the Athletic Club on April 14, 1923, and renewed from year to year until April 14, 1932, has printed on the back of the policy: “One Year Renewable Term.” This policy must conform to Section 9417, General Code.
The evidence shows that the policy was for one year; that the premium was estimated at the commencement of the year or term based on the number of employees and their several ages and the premium was paid in advance for each year. As the number of employees diminished or increased or new employees were added with different ages it became necessary at the end of the term to revalue the amount of the premium for which the Athletic Club was billed if more was to be paid to the Insurance Company or a rebate given to the Athletic Club if the amount originally paid was larger than necessary. There was no question but what this policy was issued under Section 9417, General Code. Contention was made by defendant that this policy might be an industrial policy. The court finds that it is not. This policy is one of the standard forms provided for in Section 9411, as “Standard Forms, Provisions and Prohibitions.”
Now, Section 9417 provides that “a grace period of one month subject to an interest charge at the rate of 6 per centum per annum shall be granted for the payment of every premium after the first, during which month the insurance shall continue in force. If the insured shall die *373 during the month of grace the overdue premium will be deducted from any amount payable hereon in any settlement hereunder.”
The Master Policy issued to the Athletic Club in regard to this period of grace contains printed therein the following language:
“10. Grace Period. A grace of 31 days during which the policy will remain in full force will be allowed for the payment of all premiums except the first.”
This is exactly the same language as provided for in Section 9417 but in the policy the company omits the words of the statute, to-wit: ’“During which month the insurance shall continue in force.” “If the insured shall die during the month of grace the overdue premium will be deducted from any amount payable hereon in any settlement hereunder.”
By this omission of the requirement of the statute (Section 9417) from the policy the insurance company now seeks to avoid the plain requirements of the statute (Section 9417) that the insurance is in full force for the, one month following its lapse. Can the insurance company so do? The court says “No, it cannot.”
Section 9420, General Code seems to have been passed to make absolutely effective the provisions of Section 9410, General Code, Section 9420 says:
“No policy of life insurance in form other than as provided in Sections 9412 to 9417, both inclusive, shall be issued or delivered in this state * * * unless the same shall contain the following provisions:
“(2) A provision for a grace of one month for the payment of every premium after the first, which may be subject to an interest charge, during which month the insurance shall continue in force, which provisions may contain a stipulation that if the insured shall die during the month of grace the overdue premium will be deducted in any settlement under the policy.”
That the insurance company recognized that Sections 9410, 9411, 9417 and this last cited provision of the General Code (Section 9420) were in full force and effect is evidenced by plaintiff’s Exhibit 16, a letter written to *374 the Athletic Club by the Insurance Company, referred to above, on the 20th day of May, 1932, to the effect that it was “cancelling by lapse.” This letter was more than 31 days after the expiration date of the policy.
Now, the Insurance Company claims that it had a right by contract with the Athletic Club to terminate its policy of insurance on April 14, 1932, and in effect by contract to eliminate from the policy the provision of Section 9417, General Code, to the effect that a grace of one month subject to an interest charge at the rate of — per centum per annum shall be granted for the payment of every premium after the first, during which month the insurance shall continue in force and if the insured dies during the month of grace the overdue premium will be deducted from any amount payable thereon in any settlement thereunder, and also to eliminate by contract the provisions referred to above in Section 9420, General Code, and that therefore all liability of the insurance company terminated absolutely on April 14, 1932. This court does not so hold.
The defendant asserts that the grace period as only for the payment of the premium and if not paid the 31 days, the requirements of the above sections of the General Code, have no effect. This is untenable because of the language of the statute itself which says:
“During which month the insurance shall continue in force. If the insured shall die during the month of grace the overdue premium will be deducted from any amount payable hereon in any settlement hereunder.”
This policy of insurance also provided that the insured had a right while she was still an employee of the Athletic Club in case she became totally disabled to receive a different policy of paid up insurance without examination. It also provided that if she terminated her employment with the Athletic Club within a period of thirty days she had a right to a converted policy of insurance for the amount she was then carrying. From the evidence it seems that she became totally and permanently disabled on April 16, 1932, which condition obtained until her death on April 28, 1932. So these rights also were cut off if the defendant’s contentions are correct.
*375 The Athletic Club claims that this policy of insurance was a mere gratuity; that Bessie Spencer had no interest in that policy and that the beneficiary had none; that she paid nothing for it, yet it is apparent from the testimony that her insurance was increased from time to time for the reason that she continued in the employ of the company and that the company recognized that the continued service that she was rendering entitled her to a larger amount of insurance as the service continued uninterruptedly. Had she not died and continued totally disabled she would be entitled to a ■ converted policy. Had she ceased her employment she would have had a right to a converted policy. The Insurance Company contends that the Athletic Club and the Insurance Company by contract could abrogate these provisions as well as the 31 days grace period in the insurance policy by private contract. This court will not so hold but finds that the provisions of the General Code, Sections 9410, 9411, 9417 and 9420, govern and control the insurance policy in question and are a part thereof, and that this policy of insurance was in full force and effect so far as Bessie Spencer and the plaintiff herein are concerned at the time of her death on April 28, 1932.
Section 9417 provides that if the insured shall die during the month of grace the overdue premium will be deducted from any amount payable thereon in any settlement thereunder. Plaintiff’s Exhibit 1 shows that the Insurance Company had fixed the amount of the premium at Bessie Spencer’s age. It was a specific charge against her individual certificate. The policy itself shows the amount of premium that should be deducted from the settlement. Her nearest attained age was 45 years at the time of her death. Plaintiff’s Exhibit 1, the Master Policy, says that the charge for her premium was $12.87 at that age. The court therefore finds that the plaintiff, Henry Robert Spencer, shall have judgment against the Travelers Insurance Company in the amount of $1000, the face amount of the policy, from which shall be- deducted the premium called for at her attained age, to-wit: $12.87, for which amount the court fenders judgment in favor of the plaintiff and against the defendant with interest at 6% from the 10th *376 day of October, 1932, which is a period of sixty days following receipt of proof of death, the period of sixty days being allowed under regulations for making settlement after proof of death has been received, together with plaintiff’s costs incurred herein.